# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

## IN ADMIRALTY

INTERNION SHIP REPAIR
& MARINE SERVICES, INC., a Delaware
corporation

Case No. 25-cv-2422

    Platiniff,

v.

EXPRESS MARINE, INC., a Delaware
corporation

    Defendant

_____/

## **COMPLAINT**

Plaintiff, International Ship Repair ("ISR"), hereby brings this action against Defendant Express Marine, Inc. ("EMI"), and alleges as follows:

### Parties, Jurisdiction and Venue

1. This is an action for damages arising from an agreement to dry-dock and repair two EMI vessels, the tugboat *Freedom* ("Tug") and the barge *EMI-2400* ("Barge").

2. This action arises from repairs to a vessel, and, therefore, falls within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333(1).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims stated herein occurred in this District and because the Shipyard Contract ("Contract") contains a forum selection clause agreeing that any dispute shall be "submitted to and resolved in the U.S. Federal District Court for the Middle District of Florida to the exclusion of any other forum." Exhibit A, paragraph 25.

4. ISR is a Delaware company with its principal place of business in Tampa, Florida and is authorize to do business in Florida. ISR operates a shipyard that repairs vessels.

5. EMI is a Delaware company with its principal places of business in Dresher, Pennsylvania. It is a vessel operator and lessor. It contracted to have the Tug and Barge repaired by ISR in ISR's facilities in Tampa, Florida.

6. EMI owns both the Tug and the Barge.

## General Allegations

7. EMI and ISR entered into the Contract on January 3, 2025. Exhibit "A."

8. The Contract called ISR to dry-dock and perform repairs and maintenance on the Tug and the Barge in exchange for EMI's payment for ISR's work.

9. The Contract set out in detail the time schedule for ISR's completion of the work. The relevant contractual provision concerning the schedule reads as follows:

> The first Contract Date ("Start Date") will be the day immediately following the day that the Vessels arrive at the Shipyard. The Contract Work on the Tug, including tests and trials of all systems as required by the Specifications and any additional work required to correct any issues identified as a result of the trials or tests, shall be completed in no more than forty (40) Contract Days commencing on and including the Start Date. Both Vessels shall be redelivered to the Owner on the fifty-eighth (58th) Contract Day including the Start Date ("Redelivery Date"), unless the Redelivery Date is adjusted for a reason noted in the following paragraph. Shipyard acknowledges and agrees that time is of the essence in the Contract and there shall be no permissible extensions of the Redelivery Date except and unless: (a) a valid Force Majeure Event as defined in Section 11 of this Agreement prevents the Shipyard from performing the Contract Work on the Barge and the Shipyard has complied with the Force Majeure

notice requirements, in which case the Redelivery Date shall be extended by the amount of time that the force majeure event exists, or (b) an adjustment of the Redelivery Date is approved by the Owner un writing in connection with a Change Order in accordance with the procedure set forth in Section 105 of the Specifications, or (c) the completion of tests and trials is delayed solely due to Owner's requirements for additional tests or trials beyond those required by the Specifications, in which case the Redelivery Date shall be extended by the time required to complete such additional tests or trials, or (d) the Shipyard is prevented from performing the Contract Work solely as a result of the actions or inactions of Owner's subcontractors or Owner's failure to meet its obligations under this Agreement, in which case the Redelivery Date shall be extended by the amount of time during which Shipyard is prevented from performing the Contract Work. The new date determined after adjustment in accordance with this paragraph is the "Adjusted Redelivery Date." It is understood and agreed that the Redelivery Date shall not be extended based solely on the fact that certain Contract Work items will be performed on a time and material basis.

10. The Contract also provide for liquidated damages in the event that ISR did not Redeliver the Vessel within the time set forth in the Contract. Provision reads as follows:

> The Shipyard is informed and understands that Owner will suffer monetary damages and losses if the Vessels are not redelivered on or before the Redelivery Date (or Adjusted Redelivery Date is applicable) and that the exact amount of such damages and losses cannot be determined with

certainty. Shipyard therefore agrees that it shall pay Liquidated Damages to the Owner for each calendar day of delay from the day following the Redelivery Date, or the Adjusted Redelivery Date as the case may be, until the day when Contract Work is completed and the Vessels are actually redelivered to the Owner ("Delay Days") at the rate of $20,000.00 per calendar day. The amount of Liquidated Damages payable under this Section shall reduce the Final Contract Price payable to the Shipyard by the Owner and shall be capped at a total of $300,000.00.

11. The Contract also set forth a schedule by which EMI was to make payments to ISR. Contract, paragraph 2. Under that schedule, EMI was to pay ISR all remaining sums due thirty days after the departure of the Vessels. In the event that EMI adhere to the scheduled payment requirements, it became entitled to a 3% discount to be applied to the final Contract price. The Contract, paragraph 2.

12. Work on the Tug and Barge began on April 20, 2025.

13. The Contract provided for an initial work-term of 58 days. Contract, paragraph 3.

14. 58 days from April 20, 2025 was June 17, 2025.

15. While work was proceeding on the vessels, the Redelivery Date was extended by a total of 16 ½ days. The invocation of Contract's Force Majeure

clause extended the Redelivery Date by 5.5 days. Agreed upon change orders extended the Redelivery Date by an additional 11 days. Combined, Force Majeure extension and change orders extended the Redelivery Date until July 2, 2025.

16. On July 2, 2025, however, EMI assigned three additional work items to ISR. ISR completed those work items on July 3, 2025.

17. While ISR was performing its contractual work, EMI simultaneously performed work on the vessels. EMI's work continued until July 2, 2025. For example, EMI was performing work on the Barge that required the erection of staging for EMI to perform its work. EMI tasked to ISR the erection and removal of that staging. EMI did not finish its work until July 2, 2025.  ISR could not, therefore, remove the staging until that date.

18. In light of the foregoing, the Adjusted Redelivery Date was July 3, 2025.

19. ISR redelivered the Vessels to EMI on July 3, 2025.

20. When the last payment for work performed by ISR came due, EMI underpaid ISR by $281,416.69.

21. EMI justified its underpayment by wrongfully claiming that ISR was responsible for liquidated damages for failing to redeliver the vessels on the agreed-upon Redelivery Date. EMI claimed that ISR redelivered the vessels 8.5 days late and deducted $170,000.00 from the final payment.

22. EMI also wrongfully deducted $111,416.69 from the amount owed to ISR for the contractual 3% discount for adhering to the payment schedule under section 2 of the contract.

23. ISR notified EMI in writing that it was in default under the Contract and demanded that EMI remedy that default. EMI failed to remedy its default.

24. ISR has fulfilled all preconditions necessary to bring this action.

## Count I, Breach of Contract

25. ISR incorporates paragraphs 6-24 above.

26. ISR and EMI entered into the Contract whereby ISR provided dry-docking and repair services to EMI and EMI agreed to pay a certain sum of money to ISR.

27. ISR performed its obligations under the Contract.

28. EMI breached the contract between the parties by wrongfully failing to pay the sums due under the Contract.

29. ISR has suffered damage in the amount which it was underpaid.

WHEREFORE, ISR demands a trial on the above issues of law and fact, the entry of final judgment for damages in its favor and against EMI, plus prejudgment interest, costs, attorneys' fees, damages and for such additional relief as this Court deems just and appropriate.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing with all attachments noted above shall be furnished to Owners by U.S. Mail.

/s/ Paul E. Parrish\_\_\_\_\_
Paul E. Parrish, Esq
Parrish Law, P.A.
Fla Bar No.: 373117
Jeffrey P. Bristol, Esq.
Parrish Law, P.A.
Fla. Bar No.: 1022461
1290 Highway A1A, Suite 101
Satellite Beach, FL 32937
Phone: (321) 622-4882
Email:

paul.parrish@theparrishlaw.com<br>
jeffrey.bristol@theparrishlaw.com<br>
Secondary:<br>
nichole.perez@theparrishlaw.com<br>
ashli.scott@theparrishlaw.com